UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RACHEL S.,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

Case No. C18-5377 RSL

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff Rachel S. appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

I.    FACTS AND PROCEDURAL HISTORY

Plaintiff is a 51-year-old woman with a master's degree. See Administrative Record ("AR") at 38, 211. Plaintiff protectively filed an application for disability insurance benefits on December 30, 2013, alleging that her disability began on August 1,

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

2013.  Id. at 13, 211.  The Social Security Administration ("SSA") denied Plaintiff's claims initially and upon reconsideration.  Id. at 76-84, 87-99.

Plaintiff requested a hearing before an ALJ, which took place on May 17, 2017.  See id. at 33-75.  On June 16, 2017, ALJ S. Andrew Grace issued a decision finding that Plaintiff was not disabled.  Id. at 13-24.  The Appeals Council denied review on March 6, 2018.  Id. at 1-3.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. §405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

///

## III. EVALUATING DISABILITY

Plaintiff, as the claimant, bears the burden of proving that she is disabled within the meaning of the Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §423(d)(2)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. See 20 C.F.R. §404.1520. The claimant bears the burden of proof during steps one through four. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. Id. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §404.1520(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. Id. At step two, the claimant must establish that she

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. §404.1572.

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 3

has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). If the claimant does not have such impairments, she is not disabled. Id. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §404.1520(d). A claimant whose impairment meets or equals one of the listings for the required 12-month duration is disabled. Id.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §404.1520(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §404.1520(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §404.1520(g); Tackett, 180 F.3d at 1099-100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

IV. DECISION BELOW

On June 16, 2017, the ALJ issued a decision finding the following:

1. The claimant engaged in substantial gainful activity during April, May, and June 2016. See 20 C.F.R. §§404.1571-76. However, there was a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The ALJ's remaining findings addressed the period(s) in which Plaintiff did not engage in substantial gainful activity, and served as an alternate finding for April, May, and June 2016.

2. The claimant has the following severe impairments: Irritable bowel syndrome, anxiety, adrenal insufficiency, renal agnesis/insufficiency, small fiber neuropathy, depression, post traumatic stress disorder, chronic pain, and chronic fatigue. See 20 C.F.R. §404.1520(c).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§404.1520(d), 404.1525(d), 404.1526.

4. The claimant has the RFC to perform sedentary work as defined in 20 C.F.R. §404.1567(a), except that she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, crawl, and operate foot controls. She must avoid concentrated exposure to hazards. She is limited to unskilled and semi-skilled tasks with a specific vocational preparation up to the level of four.

5. The claimant is unable to perform any past relevant work. See 20 C.F.R. §404.1565.

6. Considering the claimant's age, education, and work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. See 20 C.F.R. §§404.1569, 404.1569(a).

7. The claimant has not been under a disability, as defined in the Act, from August 1, 2013, through the date of the ALJ's decision. See 20 C.F.R. §404.1520(g).

AR at 13-24.

///

## V. ISSUES ON APPEAL

The issues on appeal are:

A. Whether the ALJ properly evaluated Plaintiff's testimony.

B. Whether the ALJ properly evaluated the medical evidence, including the opinions of Richard Panico, M.D.; Dan Lukaczer, N.D.; and Joanna Robinson, LMHC.

C. Whether the ALJ properly evaluated the lay witness evidence.

D. Whether the ALJ properly evaluated Plaintiff's RFC and his step five findings.

Dkt. 9 at 2. Plaintiff also contends that if the Court finds error, it should remand for an award of benefits. Id.

## VI. DISCUSSION

**A. Evaluation of Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred in rejecting her testimony about her symptoms. See Dkt. 9 at 9-15. The Court disagrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom;

she does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged. Id. The ALJ found that plaintiff met this first step because her medically determinable impairments could reasonably be expected to cause her alleged symptoms. AR at 19.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

The ALJ, finding no evidence of malingering, held that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. AR at 19. The ALJ gave three reasons for this determination: (1) Plaintiff's statements were inconsistent with and unsupported by the objective medical evidence; (2) Plaintiff declined medication and treatment at times; and (3) Plaintiff's statements were inconsistent with her daily activities.

1. Plaintiff's Statements Were Inconsistent with and Unsupported by the Objective Medical Evidence

The ALJ adequately explained his first reason for rejecting Plaintiff's symptom

testimony as inconsistent with and unsupported by the objective medical evidence. While an ALJ may not reject subjective pain testimony "on the sole ground that it is not fully corroborated by objective medical evidence," Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001), the ALJ may reject such testimony when it is contradicted by the objective medical evidence, see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ noted that Plaintiff improved after an emergency room visit. See AR at 19, 409, 456. Her labs and neurological examinations were regularly normal. See id. at 19-20, 409, 456, 604, 607, 673-74. Plaintiff received very little treatment between May 2014 and April 2015. Id. at 20.

The ALJ reasonably interpreted this evidence, and thus did not err in rejecting Plaintiff's symptom testimony as inconsistent with or unsupported by the objective medical evidence. See Carmickle, 533 F.3d at 1161; see also Molina, 674 F.3d at 1113 (noting that an ALJ may reasonably reject a claimant's symptom testimony when "the level or frequency of treatment [is] inconsistent with the level of complaints").

2. Plaintiff's Symptom Testimony Was Contradicted by Her Declination of Medication and Treatment

The ALJ also adequately supported his second reason for rejecting Plaintiff's symptom testimony. "[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (quoting Fair, 885 F.2d at 603). In particular, the ALJ noted that Plaintiff refused pain and anxiety medication. See AR at 21, 409. Her only explanation regarding the anxiety

medication was that she had looked up the potential side effects.  See id. at 409.  Plaintiff refused to do a calorie count during an emergency room visit related in part to weight loss.  See id. at 21, 409.  And Plaintiff declined treatment for her neuropathic pain symptoms.  See id. at 21, 605.  The ALJ reasonably interpreted this evidence in discounting Plaintiff's symptom testimony.  See Carmickle, 533 F.3d at 1161.

       3.       Plaintiff's Statements Were Inconsistent with Her Daily Activities

The ALJ's third reason for discounting Plaintiff's symptom testimony also withstands scrutiny.  An ALJ may use a claimant's activities to form the basis of an adverse credibility determination if they "contradict [her] other testimony."  See Orn, 495 F.3d at 639.  The ALJ noted that Plaintiff was diagnosed with the conditions on which she based her disability claim several years before the alleged onset date, yet worked full-time during that period.  See AR at 19, 213, 220, 396.  Similarly, Plaintiff was able to work part-time during the alleged disability period.  Id. at 21, 40-43.  Furthermore, Plaintiff exercised regularly, prepared her own food by hand, and shopped for groceries.  Id. at 21, 633, 636.

In sum, the ALJ gave three valid reasons for discounting Plaintiff's symptom testimony.  Plaintiff has consequently not met her burden of showing harmful error.  See Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing Shinseki v. Sanders, 556 U.S. 396, 407-09 (2009)).

**B.**     **Evaluation of the Medical Evidence**

Plaintiff argues that the ALJ erred in assessing the medical evidence.  Dkt. 9 at 3-

9. In particular, Plaintiff argues that the ALJ erred in rejecting the opinions of Richard Panico, M.D., Dan Lukaczer, N.D., and Joanna Robinson, LMHC. Id. The Court disagrees.

Briefly, Plaintiff discusses other medical evidence, but does not articulate why, under the substantial evidence standard of review, the Court should reverse the ALJ's weighing of those opinions. See id. at 9. The Court has repeatedly admonished Plaintiff's counsel not to submit recitation of the medical evidence followed by nothing more than conclusory legal arguments. See, e.g., Brooks v. Berryhill, No. 3:18-cv-05313-JRC, Dkt. 16 (W.D. Wash. Dec. 21, 2018). The Court will not address the ALJ's weighing of medical opinions for which Plaintiff has not identified specific errors. See Thomas, 278 F.3d at 954.

1. The ALJ Did Not Err in Discounting the Opinions of Richard Panico, M.D.

Dr. Panico was one of Plaintiff's treating doctors. See AR at 654. Dr. Panico submitted two medical opinion statements, one in September 2014, and a second in October 2016. Id. at 254-55, 654-55. In his first statement, Dr. Panico completed a check-box form, opining that Plaintiff was seriously limited in her ability to perform a number of work activities, and unable to meet competitive workplace standards in several others. Id. at 254-55. Dr. Panico gave no explanation for his opinions, noting only that Plaintiff had "severe debilitating intermittent [symptoms]," including fatigue, chronic pain, anxiety, and gastrointestinal issues, with frequent relapses. Id. at 255.

In his second statement, Dr. Panico explained Plaintiff's medical history and gave

a very brief description of his treatment of Plaintiff.  See id. at 654.  Dr. Panico did not opine as to any current limitations, but noted that when he was initially consulted in February 2014, Plaintiff was "unable to work or function independently." Id.

The ALJ gave Dr. Panico's opinions little weight.  Id. at 22.  As to Dr. Panico's September 2014 statement, it was nothing more than a check-box form, with no explanation as to the bases of Dr. Panico's opinions.  Id.  And the one page of office visit notes in the record did not support Dr. Panico's opinions.  Id.

As to Dr. Panico's October 2016 statement, it was a conclusory opinion that was unsupported by treatment notes.  Id.  Moreover, the opinion was "inconsistent with the overall record that shows improvement after the claimant's initial flare of acute symptoms."  Id.  Dr. Panico's treatment relationship with Plaintiff was similarly unclear, as he did not indicate how often he met with Plaintiff, nor did the records show more than minimal contact.  Id.

In order to reject a treating doctor's opinion that is contradicted, the ALJ must provide "'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (quoting Andrews, 53 F.3d at 1041).  The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citing Magallanes, 881 F.2d at 751).  The Court may draw "specific and legitimate inferences from the ALJ's opinion."  Magallanes, 881 F.2d

at 755.

The ALJ reasonably rejected Dr. Panico's September 2014 opinions. An ALJ may reject a treating doctor's opinions if they are "brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957 (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)). Here, as the ALJ noted, Dr. Panico's statement was nothing more than a completed check-box form. See id. at 22, 254-55.

Plaintiff attempts to rehabilitate Dr. Panico's September 2014 opinions by arguing that the October 2016 statement explains the bases for the September 2014 opinions. See Dkt. 9 at 4. The Court is unpersuaded. Dr. Panico did little more than recite Plaintiff's diagnostic history and provide a generalized description of Plaintiff's treatment in his October 2016 statement. See AR at 654. Even accepting that Dr. Panico was attempting to explain the bases for his September 2014 opinions, which Dr. Panico himself never said, the ALJ was well within his discretion to find that the explanation was inadequate to support the limitations about which Dr. Panico opined. See Thomas, 278 F.3d at 957.

The ALJ also reasonably rejected Dr. Panico's October 2016 opinion. The only actual opinion in Dr. Panico's October 2016 statement was that Plaintiff was unable to work or function independently for an undefined period of time. See AR at 654. That is clearly a conclusory opinion, and the ALJ was under no obligation to accept it. Thomas, 278 F.3d at 957; see also 20 C.F.R. §404.1527(d); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

Moreover, the ALJ reasonably concluded that Dr. Panico's October 2016 opinion

was inconsistent with the overall record, which showed improvement. See <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that a treating physician's opinion may properly be rejected where it is contradicted by other medical evidence in the record). And the ALJ properly considered that the extent of Dr. Panico's treatment relationship was unclear. Plaintiff argues that the ALJ needed to more fully develop the record to reach this conclusion. But Plaintiff had a duty to inform the ALJ of all evidence supporting her claim, and her counsel indicated at the hearing that no further records from Dr. Panico were outstanding. See AR at 36, 73-74.

The ALJ gave specific and legitimate reasons to reject Dr. Panico's opinions, and thus Plaintiff failed to show harmful error. See <u>Ludwig</u>, 681 F.3d at 1054 (citing <u>Shinseki</u>, 556 U.S. at 407-09).

2. <u>The ALJ Did Not Err in Discounting the Opinions of Dan Lukaczer, N.D.</u>

Dr. Lukaczer was another of Plaintiff's treatment providers. See AR at 609-45, 657, 697-714. He submitted a medical opinion statement on November 8, 2016. <u>Id.</u> at 657. Dr. Lukaczer opined that Plaintiff's "ongoing musculoskeletal pain and fatigue has [sic] a debilitating effect, and makes [sic] normal movements and activities of daily living difficult." <u>Id.</u> He further opined that Plaintiff could only maintain temporary part-time employment because she could "work effectively only for limited periods." <u>Id.</u>

The ALJ gave Dr. Lukaczer's opinions little weight. <u>Id.</u> at 22. The ALJ noted that Dr. Lukaczer, as a naturopathic doctor, was not an acceptable medical source; his opinions were not supported by objective medical evidence; his opinions were

inconsistent with the overall objective evidence, which showed improvement; and the fact that Plaintiff maintained substantial gainful activity during the time she met with Dr. Lukaczer was inconsistent with his opinion that she could only work part-time.

The ALJ correctly noted that Dr. Lukaczer was not an acceptable medical source. See 20 C.F.R. §404.1513(e); Bales v. Berryhill, 688 F. App'x 495, 497 (9th Cir. 2017). Accordingly, the ALJ needed to provide germane reasons for rejecting Dr. Lukaczer's opinions. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2017) (citing Molina, 674 F.3d at 1111). He gave three such reasons, at least two of which are sufficiently germane.

The ALJ reasonably rejected Dr. Lukaczer's opinions because they were not supported by objective medical evidence. See Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (citing Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). Apart from raw lab test results, Plaintiff has not pointed to any objective findings in Dr. Lukaczer's treatment notes that support his opinions. See AR at 609-45, 697-714.

The ALJ further reasonably rejected Dr. Lukaczer's opinions because—like Dr. Panico's opinions—they were contradicted by the overall objective evidence, which showed improvement. See supra Part VI.B.1; Batson, 359 F.3d at 1195.

The ALJ last rejected Dr. Lukaczer's opinions because they were inconsistent with the fact that Plaintiff worked during the alleged disability period. See AR at 22. The ALJ erred here, as Dr. Lukaczer explicitly acknowledged that Plaintiff could work part-time, eliminating any inconsistency. See id. at 657. And by the ALJ's own

determination, Plaintiff only worked part-time for a few months. See id. at 15.

Plaintiff has nonetheless failed to show that the ALJ's error was harmful. An error is not harmful if it is "'inconsequential to the ultimate nondisability determination.'" Molina, 674 F.3d at 1117 (quoting Carmickle, 533 F.3d at 1162). The ALJ gave at least two germane reasons for rejecting Dr. Lukaczer's opinions, so his inclusion of an erroneous reason "'does not negate the validity of the ALJ's ultimate conclusion." Molina, 674 F.3d at 1115 (quoting Batson, 359 F.3d at 1197).

### 3. The ALJ Did Not Err in Evaluating the Opinions of Joanna Robinson, LMHC

Ms. Robinson saw Plaintiff five times between April and November 2015. See AR at 647-53. She submitted a medical source statement on July 20, 2016. Id. at 646-47. Ms. Robinson opined that Plaintiff was markedly limited in her abilities to "remember locations and work-like procedures," "be aware of normal hazards and take appropriate precautions," "travel in unfamiliar places or to use public transportations," and "set realistic goals or to make plans independently of others." Id. Ms. Robinson opined that Plaintiff could effectively work for four hours or less a day, for a total of 20 hours per week. Id. at 647.

The ALJ did not explicitly state how much weight he assigned to Ms. Robinson's opinions. See id. at 20. He noted, however, that "Ms. Robinson's notes . . . do not reflect any objective findings." Id. And since he did not incorporate Ms. Robinson's opinions into the RFC, he treated them as if they had been rejected.

Like Dr. Lukaczer, Ms. Robinson was not an acceptable medical source, and thus

the ALJ needed to provide germane reasons for rejecting Ms. Robinson's opinions. See Dale, 823 F.3d at 943 (citing Molina, 674 F.3d at 1111).

In general, an ALJ should explicitly explain how he is weighing all of the relevant medical evidence. See Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)). But "[e]ven when an agency 'explains its decision with less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned.'" Molina, 674 F.3d at 1121 (quoting Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 497 (2004)).

Although the ALJ should have been clearer, the Court can reasonably discern from his decision that the ALJ rejected Ms. Robinson's opinions because they were not supported by objective findings. See AR at 20. The record supports this conclusion, and thus the ALJ did not commit harmful error in implicitly rejecting Ms. Robinson's opinions. See Molina, 674 F.3d at 1121.

C.      **Evaluation of the Lay Witness Evidence**

Plaintiff argues that the ALJ erred in rejecting the lay witness statements from Plaintiff's parents and friend. Dkt. 9 at 15-17. The Court disagrees.

Plaintiff submitted lay witness statements from her father, her mother, and her friend. AR at 294-306. These witnesses described their observations of Plaintiff and her symptoms. See id.

The ALJ rejected the lay witnesses' statements because "the objective record and even [the witnesses'] own statements demonstrate that the extreme symptoms they noted

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 16

were temporary and did not persist at that level over the longitudinal record." Id. at 22.

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject lay witness evidence. Molina, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." Bruce, 557 F.3d at 1115 (quoting Stout, 454 F.3d at 1054).

Plaintiff has again failed to show harmful error. The ALJ reasonably interpreted the evidence in finding that it supported only temporary extreme symptoms. See AR at 22. The ALJ justifiably discounted the lay witnesses' statements to the extent they conflicted with this interpretation of the evidence. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

**D.     Assessment of the RFC and Step Five Findings**

Plaintiff's argument regarding the ALJ's RFC determination and step five findings is derivative of her other arguments as it is based on the claim that the ALJ failed to include all of the limitations arising from Plaintiff's symptom testimony, the medical evidence, and the lay witness statements. See Dkt. 9 at 17-18. Because the Court has found that the ALJ did not err in his assessment of Plaintiff's testimony, the medical evidence, and the lay witness statements, Plaintiff's argument fails.

///

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 4th day of March, 2019.

*[signature]*
ROBERT S. LASNIK
United States District Judge